## Pennsylvania Schuylkill Valley Railroad Company, Plff. in Err., *v.* Jefferson M. Keller.

The grant of a right to use the water of a pond "to get ice in winter time and to make ice cream in summer time" gives the grantee the right to cut ice for sale.

In proceedings to assess damages for the construction of a railroad through a pond from which the plaintiff has the right to get ice, evidence that the water of the pond was foul and unfit for ice is admissible to show the value of the right destroyed.

In proceedings to assess damages for land taken or injured by a railroad company in the construction of its works it is incumbent on the plaintiff to show title to the property appropriated, and its fair market value. The railroad company, on the other hand, may show that the plaintiff does not own all the property, or that his claim is excessive.

(Argued February 28, 1887. Decided October 3, 1887.)

January Term, 1886, No. 265, E. D. All the Judges present. Error to the Common Pleas of Berks County to review a judgment on a verdict for the plaintiff in an appeal from an award of viewers. Reversed.

In the court below this was an appeal by the Pennsylvania Schuylkill Valley Railroad Company from the award of $16,000, by viewers to assess the damages caused by the construction of its road through an ice house, lot of ground and an adjoining pond on which Jefferson M. Keller, who claimed to be the owner in fee of the ice house and ground, claimed also, in fee, the right, by grant from the owner of the land to Huber and Weis, Keller's grantors, to get ice in winter, and to make ice cream in summer.

NOTE.—As to construction of grant of right to cut ice, see Farnham, Waters, p. 1604. As to measure of damages for injury to ice, or wrongful taking there of, see Farnham, Waters, p. 1606.

By agreement of counsel the cause was put at issue under the form of an action of assumpsit, and was tried upon the general issue—Keller as plaintiff taking the affirmative of the issue.

At the trial the plaintiff proved his title to the land and the grant of the right to cut ice, and introduced evidence of the damage caused by the construction of the railroad.

The court refused to admit evidence on behalf of the defendant or to charge that the grant of the right to get ice was for the purpose of manufacturing ice cream only (first, second, third, and fourth assignments of error); refused to admit evidence that the water of the Union canal which backed into the pond was too filthy to be suitable for making ice (fifth and sixth assignments of error); or that the condition of the Union canal was such as to indicate its early abandonment (seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error); admitted on behalf of the plaintiff a map made by a surveyor upon an actual survey of the ground for the purpose of describing the location (thirteenth assignment of error); refused to admit evidence on the part of the defendant that part of the premises claimed by the plaintiff was not included by the descriptions in his deeds (fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth assignments of error); refused to charge that the plaintiff had no right to sustain the level of the pond by a dam if the Union canal should be drawn down (twentieth assignment of error).

The rulings of the court below which were the subjects of the remaining (twenty-first to thirty-ninth) assignments of error are summed up in the opinion.

Verdict and judgment for the plaintiff for $17,485.13.

*Isaac Hiester* and *Cyrus G. Derr*, for plaintiffs in error.— Keller's rights upon the pond in question arose under the grant to his predecessors, Huber and Weis, of the "right and privilege . . . to get ice in winter time and to make ice cream in summer time."

The impossibility, in the future, of aiding the insufficiency of his dam by means of the canal, as the plaintiff had been doing for years before, and the impurity of the water backed into his pond from the canal were circumstances tending to lessen the market value of the plaintiff's property; and the court erred in not admitting the evidence.

It is clear that a railroad company must be permitted in a proceeding of this sort, commenced by an alleged landowner, to dispute his title to the property for which damages are claimed. If this were not so, the company might be obliged to pay damages for the same land a number of times.

The duties of the viewers under the act of 1849 are: "To estimate and determine whether any and if any what amount of damages have been or may be sustained and to whom payable." If they err in either of these findings, the railroad company may appeal. The proceeding is then *de novo,* and the question of title arises upon the trial of course. Church v. Northern C. R. Co. 45 Pa. 339.

The time for raising a question of title is upon the trial as in other cases, unless, as in McCurdy v. Chestnut Hill R. Co. 8 W. N. C. 143, there are several claimants to the same property and the company desires all the claimants to be bound by the one proceeding.

*H. C. G. Reber* and *Geo. F. Baer,* for defendant in error.— The company was estopped by its proceedings, and by the form of the issue, from disputing the claimant's title. Church v. Northern C. R. Co. 45 Pa. 340; McCurdy v. Chestnut Hill R. Co. 8 W. N. C. 144; Peoria & R. I. R. Co. v. Bryant, 57 Ill. 473; Selma, R. & D. R. Co. v. Camp, 45 Ga. 180; Missouri River, Ft. S. & G. R. Co. v. Owen, 8 Kan. 409; Peoria, P. & J. R. Co. v. Laurie, 63 Ill. 264; Rippe v. Chicago D. & M. R. Co. 23 Minn. 18; Knauft v. St. Paul, S. & T. F. R. Co. 22 Minn. 173.

Assuming, however, that the question of title could be raised, the plaintiff in error made no offer which tended to disprove Keller's title.

The property had been used as an ice dam for nearly forty years. From 1848 to the time of the appropriation by the railroad company, the ice cut from the dam was sold in the city of Reading.

The addition of the words "make ice cream in summer time" is to be construed as an additional grant, and not as restricting the operation of the first.

The offers to show that the water of the Union canal was polluted and unhealthy; that the general appearance of the canal indicated neglect, and the necessary and speedy abandonment of

the same, which would deprive Keller of the backwater and the ability to cut ice upon it; and that since the appropriation the stock holders of the canal company had resolved to abandon it,— were irrelevant and inadmissible.

OPINION BY MR. JUSTICE STERRETT:

The grant from Shaneman to Huber and Weis was correctly construed by the court below, and hence there is no error in the rulings complained of in the first four specifications.

Evidence tending to show the polluted condition of the water in the canal, as affecting the market value of the property in question at the time it was appropriated by the railroad company, should have been received and submitted to the jury. The evidence proposed may have been entitled to very little weight, but still it was proper for their consideration. The fifth to twelfth specifications, inclusive, together with the twentieth, are therefore sustained.

As the basis of his claim for damages it was, of course, incumbent on plaintiff below to show title to the property claimed by him and appropriated by the railroad company, and its fair market value at the time it was taken. On the other hand the company had a right to rebut by proving, if it could, that part of the premises in question did not belong to plaintiff and that his claim was excessive. There is nothing in the form of the issue or the pleadings to preclude defense on either of these grounds. The offers of evidence bearing on these points, and referred to in the fourteenth to nineteenth specifications inclusive, should have been received and submitted to the jury with proper instructions as to its effect.

The remaining specifications are not sustained. The property appropriated by the railroad company was an ice plant, operated as such by plaintiff below. Its value depended on its location, facilities for conducting the business, proximity to market, etc. Facts tending to enlighten the jury on these subjects, and thus enable them to reach a correct conclusion as to its value, were therefore admissible. The principles of law applicable to claims such as this have been so often stated that it is unnecessary to repeat them.

Judgment reversed and a *venire facias de novo* awarded.